Richard R. Barker
Acting United States Attorney
Eastern District of Washington
Nowles Heinrich
Assistant United States Attorney
Post Office Box 1494
Spokane, WA 99210-1494
Telephone: (509) 353-2767

FILED IN THE U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

MAR 2 6 2025

SEAN F. McAVOY, CLERK
SPOKANE, WASHINGTON

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>LEONARDO HERRERA LOPEZ,<br><br>Defendant. | Case No. 2:23-CR-47-TOR-3<br><br>PLEA AGREEMENT |

Plaintiff United States of America, by and through Richard R. Barker, Acting United States Attorney for the Eastern District of Washington, and Nowles Heinrich, Assistant United States Attorney for the Eastern District of Washington, and Defendant, LEONARDO HERRERA LOPEZ ("Defendant"), both individually and by and through Defendant's counsel, Frank L. Cikutovich, agree to the following Plea Agreement:

1. <u>Waiver of Indictment, Guilty Plea, and Maximum Statutory Penalties:</u>

Defendant agrees to waive indictment by Grand Jury and enter a plea of guilty to the sole count of the Information filed on March 26, 2025, charging Defendant with Distribution of 5 Grams or More of Actual (Pure) Methamphetamine, a Schedule II controlled substance, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(B)(viii).

PLEA AGREEMENT - 1

Defendant understands that the following potential penalties apply:

    a. a term of imprisonment of not less than 5 years and not more than 40 years;

    b. a term of supervised release of not less than 4 years and up to a lifetime;

    c. a fine of up to $5,000,000;

    d. denial of federal benefits; and

    e. a $100 special penalty assessment.

2. <u>Supervised Release</u>

Defendant understands that if Defendant violates any condition of Defendant's supervised release, the Court may revoke Defendant's term of supervised release, and require Defendant to serve in prison all or part of the term of supervised release authorized by statute for the offense that resulted in such term of supervised release without credit for time previously served on post-release supervision, up to the following terms:

    a. 5 years in prison if the offense that resulted in the term of Supervised Release is a class A felony,

    b. 3 years in prison if the offense that resulted in the term of Supervised Release is a class B felony, and/or

    c. 2 years in prison if the offense that resulted in the term of Supervised Release is a class C felony.

Accordingly, Defendant understands that if Defendant commits one or more violations of supervised release, Defendant could serve a total term of incarceration greater than the maximum sentence authorized by statute for Defendant's offense or offenses of conviction.

3. <u>Denial of Federal Benefits:</u>

Defendant understands that by entering this plea of guilty, Defendant is no longer eligible for assistance under any state program funded under part A of Title

PLEA AGREEMENT - 2

IV of the Social Security Act (concerning Temporary Assistance for Needy Families) or benefits under the food stamp program or any state program carried out under the Food Stamp Act. 21 U.S.C. § 862a. Defendant also understands that the Court may deny Defendant's eligibility for any grant, contract, loan, professional license, or commercial license provided by an agency of the United States or by appropriated funds of the United States. 21 U.S.C. § 862.

4. <u>Potential Immigration Consequences of Guilty Plea</u>

If Defendant is not a citizen of the United States, Defendant understands the following:

    a.    pleading guilty in this case may have immigration consequences;

    b.    a broad range of federal crimes may result in Defendant's removal from the United States, including the offense to which Defendant is pleading guilty;

    c.    removal from the United States and other immigration consequences are the subject of separate proceedings; and

    d.    no one, including Defendant's attorney or the Court, can predict with absolute certainty the effect of a federal conviction on Defendant's immigration status.

Defendant affirms that Defendant is knowingly, intelligently, and voluntarily pleading guilty as set forth in this Plea Agreement, regardless of any immigration consequences that Defendant's guilty plea may entail.

5. <u>The Court is Not a Party to the Plea Agreement</u>:

The Court is not a party to this Plea Agreement and may accept or reject it. Defendant acknowledges that no promises of any type have been made to Defendant with respect to the sentence the Court will impose in this matter.

Defendant understands the following:

    a.    sentencing is a matter solely within the discretion of the Court;

      b.    the Court is under no obligation to accept any recommendations made by the United States or Defendant;

      c.    the Court will obtain an independent report and sentencing recommendation from the United States Probation Office;

      d.    the Court may exercise its discretion to impose any sentence it deems appropriate, up to the statutory maximum penalties;

      e.    the Court is required to consider the applicable range set forth in the United States Sentencing Guidelines, but may depart upward or downward under certain circumstances; and

      f.    the Court may reject recommendations made by the United States or Defendant, and that will not be a basis for Defendant to withdraw from this Plea Agreement or Defendant's guilty plea.

6. <u>Waiver of Constitutional Rights</u>:

Defendant understands that by entering this plea of guilty Defendant is knowingly and voluntarily waiving certain constitutional rights, including:

      (a).    The right to a jury trial;

      (b).    The right to see, hear and question the witnesses;

      (c).    The right to remain silent at trial;

      (d).    The right to testify at trial; and

      (e).    The right to compel witnesses to testify.

While Defendant is waiving certain constitutional rights, Defendant understands Defendant retains the right to be assisted by an attorney through the sentencing and any direct appeal of Defendant's conviction and sentence, and that an attorney will be appointed at no cost if Defendant cannot afford to hire an attorney.

Defendant understands and agrees that any defense motions currently pending before the Court are mooted by this Plea Agreement, and Defendant expressly waives Defendant's right to bring any additional pretrial motions.

7. <u>Elements of the Offense</u>:

The United States and Defendant agree that to convict Defendant of Distribution of 5 Grams or More of Actual (Pure) Methamphetamine, a Schedule II controlled substance, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(B)(viii), the United States would have to prove beyond a reasonable doubt the following elements:

*First*, on or about January 30, 2023, within the Eastern District of Washington, Defendant knowingly distributed a mixture or substance containing a detectable amount of methamphetamine;

*Second*, Defendant knew that it was methamphetamine or some other federally controlled substance; and

*Third*, Defendant distributed 5 grams or more of actual (pure) methamphetamine.

8. <u>Statement of Facts</u>:

The United States and Defendant stipulate and agree to the following: the facts set forth below are accurate; the United States could prove these facts beyond a reasonable doubt at trial; and these facts constitute an adequate factual basis for Defendant's guilty plea.

The United States and Defendant agree that this statement of facts does not preclude either party from presenting and arguing, for sentencing purposes, additional facts that are relevant to the Sentencing Guidelines computation or sentencing, unless otherwise prohibited in this Plea Agreement. The parties further agree and stipulate that this factual basis is simply a summary to support the plea and it does not contain all facts which could be proven by the United States. The stipulation also does not contain each and every fact known to Defendant

concerning his involvement and the involvement of others in the charges set forth in the Superseding Indictment and Information.

### Background

By January 2023, Bureau of Indian Affairs ("BIA") identified Erubey Arciga MEDRANO as a leader/organizer for a drug trafficking organization operating in the Orville, Washington area, on the Colville Indian Reservation, and on the Crow Indian Reservation in Montana. MEDRANO and his father, Virgilio Arciga GALVAN, were engaged in the large-scale distribution of methamphetamine and fentanyl in the Eastern District of Washington and elsewhere. A takedown occurred on April 19, 2023, in both the District of Montana and the Eastern District of Washington. As a result of the takedown, numerous pounds of methamphetamine, fentanyl, and other drugs were removed from the Oroville community and seized from property associated with MEDRANO, GALVAN, and others.

During the investigation (and prior to the takedown), BIA, the Drug Enforcement Administration ("DEA"), Washington State law enforcement, and Colville Tribal law enforcement conducted a series of controlled buys, beginning in January 2023 through March 2023 from MEDRANO and individuals selling drugs on MEDRANO's behalf. The investigation revealed that MEDRANO, GALVAN, and Luis Esquivel-BOLANOS (also known as "Colorado") exercised control over the drug trafficking operation.

### January 30, 2023 Controlled Purchase of Methamphetamine from LOPEZ

On January 30, 2023, the investigation team conducted a controlled buy from the MEDRANO drug trafficking organization, utilizing a confidential informant. Specifically, the informant called a phone number associated with co-defendant Chad VANATTA to arrange for the purchase of two ounces of methamphetamine. The informant spoke with VANATTA, and the informant agreed to travel to a gas station in Tonasket, Washington to purchase the methamphetamine. At the agreed-

PLEA AGREEMENT - 6

upon meet location, VANATTA met with the informant and instructed the informant to travel to the informant's residence to meet Defendant Leonardo Herrera LOPEZ and purchase the methamphetamine. The informant did so.

During the controlled buy, the informant successfully purchased what was purported to be two ounces of methamphetamine from Defendant LOPEZ. Upon completion of the transaction, investigators met with the informant and collected the methamphetamine. These events all occurred within the Eastern District of Washington.

The DEA's laboratory has tested the methamphetamine from the controlled buy and determined it contains approximately 55 grams of actual (pure) methamphetamine, a Schedule II controlled substance.

**March 7, 2023 Controlled Buy of Methamphetamine from LOPEZ**

On March 7, 2023, the investigation team conducted another controlled buy from the MEDRANO drug trafficking organization utilizing a confidential informant. The informant called MEDRANO and requested to purchase four ounces of methamphetamine. Co-defendant MEDRANO instructed the informant to meet Defendant LOPEZ at a store in Oroville, Washington to purchase the four ounces of methamphetamine.

The informant met Defendant LOPEZ at the designated location in Oroville and successfully purchased methamphetamine from defendant LOPEZ. These events all occurred within the Eastern District of Washington.

The DEA's laboratory has tested the methamphetamine from the controlled buy and determined it contains approximately 108 grams of actual (pure) methamphetamine, a Schedule II controlled substance.

**April 19, 2023 Search Warrant**

On April 19, 2023, the search warrants were executed. During the execution of search warrants, BIA, DEA, and their law enforcement partners recovered large quantities of illegal controlled substances from premises associated with

PLEA AGREEMENT - 7

MEDRANO, GALVAN, and BOLANOS. These included fentanyl-laced pills, methamphetamine, heroin, and cocaine. In total, law enforcement partners seized approximately 161,000 fentanyl pills (to include "Mexi-blues" and rainbow-colored pills), approximately 80 pounds of methamphetamine, approximately 6 pounds of heroin, and approximately 2.2 pounds of cocaine. Law enforcement also seized approximately 12 firearms and U.S. currency.

While Defendant was not aware of the full extent of the drug trafficking operations and was not involved in the distribution of all the drugs discussed herein (e.g., the drugs recovered from MEDRANO's compound or from the picker cabins), Defendant was aware that the MEDRANO organization was distributing large quantities of drugs beyond those that he personally distributed. LOPEZ delivered drugs to customers on behalf of the MEDRAN organization and the transactions usually involved at least one ounce of methamphetamine.

9. <u>The United States' Agreements:</u>

The United States Attorney's Office for the Eastern District of Washington agrees not to bring any additional charges against Defendant based upon information in its possession at the time of this Plea Agreement and arising out of Defendant's conduct involving the illegal activity charged in the Information and Superseding Indictment, unless Defendant breaches this Plea Agreement before sentencing. The United States further agrees to dismiss any remaining counts charged against Defendant in the Superseding Indictment filed on May 9, 2024.

10. <u>United States Sentencing Guideline Calculations:</u>

Defendant understands and acknowledges that the United States Sentencing Guidelines (hereinafter "USSG" or "Guidelines") apply and that the Court will determine Defendant's advisory range at the time of sentencing, pursuant to the Guidelines. The United States and Defendant agree to the following Guidelines calculations:

     a.    *Base Offense Level and Application of Relevant Conduct*:

The parties agree and stipulate that more than 90,000 kilograms of converted drug weight[1] was distributed and possessed with the intent to further the criminal activity jointly undertaken by Defendant and his co-conspirators; this amount was reasonably foreseeable to this Defendant in connection with the conspiracy; and this Defendant's relevant conduct for sentencing purposes should be calculated based upon this amount, pursuant to USSG §1B1.3.

This would amount to a Base Offense Level 38; however, as the parties are recommending the Defendant receive a minimal participant role reduction, *infra*, Defendant's Base Offense Level is reduced to 32. *See* USSG §2D1.1(a)(5).

     b.    *Safety Valve*:

The United States and Defendant acknowledge that Defendant is not eligible for the safety valve provisions of 18 U.S.C. § 3553(f) and USSG § 5C1.2.

     c.    *Role Adjustments*:

The United States and Defendant agree to recommend Defendant was a minimal participant in the overall conduct and therefore, should receive an additional four-level reduction in his offense level pursuant to USSG §3B1.2(a).

     d.    *Acceptance of Responsibility*:

The United States will recommend that Defendant receive a three-level downward adjustment for acceptance of responsibility, pursuant to USSG § 3E1.1(a), (b), if Defendant does the following:

          i.    accepts this Plea Agreement;

          ii.    enters a guilty plea at the first Court hearing that takes place after the United States offers this Plea Agreement;

---

[1] The parties are recommending the use of the Drug Equivalency Table pursuant to USSG §2D1.1 note 8.

PLEA AGREEMENT - 9

        iii.        demonstrates recognition and affirmative acceptance of Defendant's personal responsibility for Defendant's criminal conduct;

        iv.        provides complete and accurate information during the sentencing process; and

        v.        does not commit any obstructive conduct.

The United States and Defendant agree that at its option and on written notice to Defendant, the United States may elect not to recommend a reduction for acceptance of responsibility if, prior to the imposition of sentence, Defendant is charged with, or convicted of, any criminal offense, or if Defendant tests positive for any controlled substance.

    e.    *Agreements Regarding Representations to the Court*

The United States has a duty of candor to the tribunal. If the United States and Defendant do not agree on the appropriate length of incarceration, the appropriate length or applicable terms of supervised release, and/or the correct guidelines calculations, variances, departures, and/or enhancements, the United States reserves the right to respond to any and all arguments made by Defendant, on any bases the United States deems appropriate, at all stages of this criminal case.

Defendant may make any arguments it deems appropriate, at all stages of this criminal case.

With regard to all briefing, submissions, and hearings in this criminal case, the United States and Defendant agree to the following provisions:

        i.        The United States and Defendant may each respond to any questions from the Court or United States Probation Office;

        ii.        The United States and Defendant may each supplement the facts under consideration by the Court by providing

PLEA AGREEMENT - 10

information the United States or Defendant deems relevant;

iii. The United States and Defendant may each present and argue any additional facts that the United States or Defendant believe are relevant to the Sentencing Guidelines computation or sentencing;

iv. The United States and Defendant may each present and argue information that may already be known to the Court, including information contained in the Presentence Investigation Report;

v. The United States and Defendant may each respond to any arguments presented by the other party;

vi. In order to support the United States' sentencing recommendation as set forth herein, the United States may oppose and argue against any defense argument or any recommendation for any sentence lower than the sentence recommended by the United States on any basis, including arguments for a lower offense level, a lower criminal history calculation, the application or non-application of any sentencing enhancement or departure, and/or any variance from the Guidelines range as calculated by the Court;

vii. In order to support the defense sentencing recommendation as set forth herein, the Defendant may oppose and argue against any argument by the United States, or any recommendation for any sentence higher than the sentence recommended by the defense on any basis, including arguments for a higher offense level, a

        higher criminal history calculation, the application or non-application of any sentencing enhancement or departure, and/or any variance from the Guidelines range as calculated by the Court;

    viii.    The United States may make any sentencing arguments the United States deems appropriate so long as they are consistent with this Plea Agreement, including arguments arising from Defendant's uncharged conduct, conduct set forth in charges that will be dismissed pursuant to this Plea Agreement, and Defendant's relevant conduct; and

    ix.    Defendant may make any sentencing arguments consistent with this Plea Agreement that Defendant deems appropriate.

    f.    *No Other Agreements*:

The United States and Defendant have no other agreements regarding the Guidelines or the application of any Guidelines enhancements, departures, or variances. Defendant understands and acknowledges that the United States is free to make any sentencing arguments it sees fit, including arguments arising from Defendant's uncharged conduct, conduct set forth in charges that will be dismissed pursuant to this Agreement, and Defendant's relevant conduct.

    f.    *Criminal History*:

The United States and Defendant have made no agreement and make no representations as to Defendant's Criminal History Category, which shall be determined by the Court at sentencing after the Presentence Investigation Report is completed.

11. <u>Length of Incarceration</u>:

The United States and Defendant each agree to recommend five years of imprisonment.

PLEA AGREEMENT - 12

12. <u>Supervised Release</u>:

The United States and Defendant each agree to recommend four (4) years of supervised release. Defendant agrees that the Court's decision regarding the conditions of Defendant's Supervised Release is final and non-appealable; that is, even if Defendant is unhappy with the conditions of Supervised Release ordered by the Court, that will not be a basis for Defendant to withdraw Defendant's guilty plea, withdraw from this Plea Agreement, or appeal Defendant's conviction, sentence, or any term of Supervised Release.

The United States and Defendant agree to recommend that in addition to the standard conditions of supervised release imposed in all cases in this District, the Court should also impose the following conditions:

    (a). Defendant shall participate and complete such drug testing and drug treatment programs as the Probation Officer directs; and

    (b). The United States Probation Office may conduct, upon reasonable suspicion, and with or without notice, a search of Defendant's person, residences, office, vehicles, belongings, and areas under Defendant's exclusive or joint control.

13. <u>Criminal Fine</u>:

The United States and Defendant agree to recommend the Court impose no criminal fine. Defendant acknowledges that the Court's decision regarding a fine is final and non-appealable; that is, even if Defendant is unhappy with a fine ordered by the Court, that will not be a basis for Defendant to withdraw Defendant's guilty plea, withdraw from this Plea Agreement, or appeal Defendant's conviction, sentence, or fine.

14. <u>Mandatory Special Penalty Assessment</u>:

Defendant agrees to pay the $100 mandatory special penalty assessment to the Clerk of Court for the Eastern District of Washington, pursuant to 18 U.S.C. § 3013.

PLEA AGREEMENT - 13

15. <u>Payments While Incarcerated</u>:

If Defendant lacks the financial resources to pay the monetary obligations imposed by the Court, Defendant agrees to earn money toward these obligations by participating in the Bureau of Prisons' Inmate Financial Responsibility Program.

16. <u>Additional Violations of Law Can Void Plea Agreement</u>:

The United States and Defendant agree that the United States may, at its option and upon written notice to the Defendant, withdraw from this Plea Agreement or modify its sentencing recommendation if, prior to the imposition of sentence, Defendant is charged with or convicted of any criminal offense or tests positive for any controlled substance.

17. <u>Waiver of Appeal and Collateral Attack Rights</u>:

Defendant understands that Defendant has a limited right to appeal or challenge Defendant's conviction and the sentence imposed by the Court. Defendant expressly waives Defendant's right to appeal Defendant's conviction and/or sentence. Defendant also expressly waives Defendant's right to appeal any fine, term of supervised release, or restitution order imposed by the Court.

Defendant expressly waives the right to file any post-conviction motion attacking Defendant's conviction and sentence, including a motion pursuant to 28 U.S.C. § 2255, except one based on ineffective assistance of counsel arising from information not now known by Defendant and which, in the exercise of due diligence, Defendant could not know by the time the Court imposes sentence.

Nothing in this Plea Agreement shall preclude the United States from opposing any post-conviction motion for a reduction of sentence or other attack upon the conviction or sentence, including, but not limited to, writ of habeas corpus proceedings brought pursuant to 28 U.S.C. § 2255.

PLEA AGREEMENT - 14

18. <u>Withdrawal or Vacatur of Defendant's Plea</u>:

Should Defendant successfully move to withdraw from this Plea Agreement or should Defendant's conviction be set aside, vacated, reversed, or dismissed under any circumstance, then:

    a. this Plea Agreement shall become null and void;

    b. the United States may prosecute Defendant on all available charges;

    c. the United States may reinstate any counts that have been dismissed, have been superseded by the filing of another charging instrument, or were not charged because of this Plea Agreement; and

    d. the United States may file any new charges that would otherwise be barred by this Plea Agreement.

The decision to pursue any or all of these options is solely in the discretion of the United States Attorney's Office.

Defendant agrees to waive any objections, motions, and/or defenses Defendant might have to the United States' decisions to seek, reinstate, or reinitiate charges if a count of conviction is withdrawn, set aside, vacated, reversed, or dismissed, including any claim that the United States has violated Double Jeopardy.

Defendant agrees not to raise any objections based on the passage of time, including but not limited to, alleged violations of any statutes of limitation or any objections based on the Speedy Trial Act or the Speedy Trial Clause of the Sixth Amendment.

19. <u>Integration Clause</u>:

The United States and Defendant acknowledge that this document constitutes the entire Plea Agreement between the United States and Defendant,

PLEA AGREEMENT - 15

and no other promises, agreements, or conditions exist between the United States and Defendant concerning the resolution of the case.

This Plea Agreement is binding only on the United States Attorney's Office for the Eastern District of Washington, and cannot bind other federal, state, or local authorities.

The United States and Defendant agree that this Agreement cannot be modified except in a writing that is signed by the United States and Defendant.

<u>Approvals and Signatures</u>

Agreed and submitted on behalf of the United States Attorney's Office for the Eastern District of Washington.

Richard R. Barker
Acting United States Attorney

_____          3/26/25
Nowles Heinrich                              Date
Assistant U.S. Attorney

I have read this Plea Agreement and have carefully reviewed and discussed every part of the agreement with my attorney. I understand and voluntarily enter into this. Furthermore, I have consulted with my attorney about my rights, I understand those rights, and I am satisfied with the representation of my attorney in this case. My attorney has advised me that by pleading guilty to the charges relevant to this Plea Agreement, as of this date deportation appears to be a virtual certainty. No other promises or inducements have been made to me, other than those contained in this Plea Agreement, and no one has threatened or forced me in any way to enter into this Plea Agreement. I am agreeing to plead guilty because I am guilty.

_____          3·26.25
LEONARDO HERRERA LOPEZ              Date
Defendant

PLEA AGREEMENT - 16

1  I have read the Plea Agreement and have discussed the contents of the Plea
2  Agreement with Defendant. The Plea Agreement accurately and completely sets
3  forth the entirety of the agreement between the parties. I have further advised my
4  client by pleading guilty to the charges relevant to this Plea Agreement, as of this
5  date deportation appears to be a virtual certainty. I concur in Defendant's decision
6  to plead guilty as set forth in the Plea Agreement. There is no legal reason why the
7  Court should not accept Defendant's plea of guilty.

_____    3-26-25
Frank L. Cikutovich, Esq.    Date
Attorney for the Defendant

PLEA AGREEMENT - 17